Amy M. Gallegos (SBN 211379)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
amy.gallegos@hoganlovells.com

J. Robert Robertson
Corey W. Roush
Benjamin F. Holt
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
robby.robertson@hoganlovells.com
corey.roush@hoganlovells.com
benjamin.holt@hoganlovells.com

Attorneys for Defendants
LABORATORY CORPORATION and
LABORATORY CORPORATION OF
AMERICA HOLDINGS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LABORATORY CORPORATION OF AMERICA, et al,<br><br>Defendants. | Case No. SACV 10-1873 AG (MLGx)<br><br>**EXHIBITS TO DEFENDANTS' OPPOSITION TO PLAINTIFF FEDERAL TRADE COMMISSION'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>[VOLUME I]<br><br>Date: February 3, 2011<br>Time: 10:00 A.M.<br>Ctrm: 10D<br>Judge: Hon. Andrew J. Guilford |

\\\\LA - 060482/000107 - 482838 v1

# INDEX TO EXHIBITS FILED IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| EXHIBIT NUMBER | DESCRIPTION | BATES NUMBER | PAGE NO. |
|---|---|---|---|
| LX-0208 | Dissenting Statement of Commissioner J. Thomas Rosch | | 27 |
| LX-0209 | 11/15/2010 Letter from R. Leibenluft to R. Feinstein | | 29 |
| LX-0301 | Declaration of James P. Mason | | 33 |
| LX-0302 | Declaration of Mary Dempsey | | 35 |
| LX-0303 | Declaration of Helene Beilman-Werner | | 37 |
| LX-0304 | Declaration of Gary M. Bohamed | | 40 |
| LX-0306 | Declaration of Robert O'Keefe | | 42 |
| LX-0307 | Declaration of Jill Martin | | 44 |
| LX-0406 | Declaration of Michael Aicher | | 46 |
| LX-0407 | Declaration of Thomas R. McCarthy and Lawrence Wu | | 140 |
| LX-0500 | Sandra Harris IH Transcript | | 206 |
| LX-0635 | Mainsail Partners Warm Deal Memo | JG000006-0000011 | 302 |
| LX-0637 | *The Australian* article "Sonic in $84m laboratory spending spree." | | 308 |
| LX-0638 | *Dark Daily* article: "Sonic Healthcare Buys California Clinical Pathology Laboratory Company." | | 310 |
| LX-0639 | Declaration of Vicki DiFrancesco and exhibits | PATH000001 - PATH000067 | 314 |
| LX-0641 | Capitated Lives Distribution Shares of LabCorp and Westcliff by County | | 397 |
| LX-0642 | Accession Distribution Shares of LabCorp and Westcliff by County | | 398 |
| LX-0643 | Contracted Capitated Rates | | 399 |
| LX-0644 | 6/4/2010 email from M.Pakkala to J. Klarfeld, et al | | 401 |
| LX-0645 | Declaration of Michael Aicher | | 437 |
| LX-0647 | Declaration of Nancy Stephenson | FTC-LCAP-001735– FTC-LCAP-001737 | 451 |
| LX-0649 | In The Matter of Quest Diagnostics Inc. v. Unilab Corp., Order to Maintain Assets | | 454 |
| LX-0650 | Quest Diagnostics 2003 Annual Report | | 170 |

| | | | |
|---|---|---|---|
| LX-0651 | Declaration of Daniel McCormick | | 579 |
| LX-0652 | Declaration of Leda Rogge | | 603 |
| LX-0654 | Declaration of Helene Beilman-Werner | | 610 |
| LX-1605 | LabWest financial statement | | 614 |
| LX-1607 | Memo from Jon Braff | LCA-MCCD-0001942 | 618 |
| LX-1608 | Internal Summary from Joe Chiaro | LCA-MCCDe-0217810 | 619 |
| LX-1610 | Internal Summary from Sandy Harris | LCA-MCCDe-0110091 | 621 |
| LX-1611 | Internal Summary from Sandy Harris | LCA-HARSe-00220543 | 624 |
| LX-2103 | 8/19/2010 email from R. Swanson to S. Wilkerson | FTC-LCAE-004984 - FTC-LCAE-004988 | 631 |
| LX-2411 | Blue Shield Diversion Regs.log | | 636 |
| LX-2412 | PMPM regression | | 642 |
| LX-2415 | Estimated Annual Customer Savings for Difference in Price as Percent of Medicare for Managed Care FFS Contracts for WestCliff and LabCorp | | 655 |
| LX-2423 | Analyses of WestCliff and LabCorp's Capitated "Bids" | | 657 |
| LX-2428 | Bid data regression | | 659 |
| LX-5000 | Highlighted Deposition Transcript -- Shrider Ananthan | | 679 |
| LX-5001 | Highlighted Deposition Transcript -- Ion Baroi | | 720 |
| LX-5002 | Highlighted Deposition Transcript -- Jeff Glenn | | 750 |
| LX-5003 | Highlighted Deposition Transcript -- Robert O'Keefe | | 788 |
| LX-5004 | Deposition Transcript -- Fredrick Flyer | | 818 |
| LX-5005 | Highlighted Deposition Transcript -- David Zembick | | 874 |
| LX-5006 | Highlighted Deposition Transcript -- Rafael Gonzalez | | 893 |
| LX-5007 | Highlighted Deposition Transcript --Sam Lablue | | 911 |
| LX-5008 | Highlighted Deposition Transcript -- Yvonne Sonnenberg | | 927 |
| LX-5009 | Highlighted Deposition Transcript -- Daniel Shoemaker | | 951 |
| LX-5010 | Highlighted Deposition Transcript -- Richard Swanson | | 977 |
| LX-5011 | Deposition Transcript -- Lawrence Wu | | 1007 |

| | | | |
|---|---|---|---|
| LX-5012 | Highlighted Deposition Transcript -- Mary Dempsey | | 1081 |
| LX-5013 | Highlighted Deposition Transcript -- Cindy Wiesner | | 1104 |
| LX-5014 | Highlighted Deposition Transcript -- David Carrish | | 1137 |
| LX-5015 | Highlighted Deposition Transcript --Noel Maring | | 1155 |
| PX-1147 | Exhibit 12(b), LabCorp Response to Specification 12, WestCliff Bids 2007-2010 | | 1180 |
| PX-1153 | Exhibit 12(a), LabCorp Response to Specification 12, LabCorp Bids 2005-2010 | | 1186 |
| LX-0653 | Declaration of Daniel Shoemaker | | 1195 |
| LX-1617 | October 29, 2009, Linden Presentation | | 1198 |
| LX-1554 | February 2, 2010, Bakersfield Letter | LCA-VERK-0000075 – LCA-VERK-0000076 | 1216 |
| LX-2744 | August 10, 2009, Mark Hayes Email | DGX-FTC2010-0202291 - DGX-FTC2010-0202295 | 1217 |

DISSENTING STATEMENT OF COMMISSIONER J. THOMAS ROSCH
*IN THE MATTER OF LABORATORY CORPORATION OF AMERICA
AND LABORATORY CORPORATION OF AMERICA HOLDINGS*
FTC Docket No. 9345 and File No. 101-0152

**November 30, 2010**

The complaint permits the relevant product market to be defined as "[t]he sale of clinical laboratory testing services under capitated contracts to physician groups."[1] However, both as a matter of law and common sense, the relevant market must also include clinical laboratory services provided under fee-for-service contracts to those same physician groups.

More specifically, there are three unavoidable problems with the complaint's proposed capitated-only market. *First*, the proposed market definition cannot be squared with the market the Commission alleged in the *Quest/Unilab* matter. That complaint states that "the relevant line of commerce in which to analyze the effects of the Proposed Merger is the provision of clinical laboratory testing services to physician groups."[2] There is nothing in that definition that limits it to capitated contracts.

*Second*, the inclusion of a capitated-only market cannot be reconciled with footnote 4 of the Horizontal Merger Guidelines. Footnote 4 explains that if the sale of one product affects the prices of another product sold by the same company, the two products should be placed in the same candidate market.[3] That is precisely what is occurring here.

The physician groups in this case control two products that Labcorp, Westcliff, and every other lab in the capitated business are interested in – (1) the sale of capitated contracts to labs,

---

[1] Complaint ¶ 13, *In re Labcorp of Am. Holdings*, FTC File No. 101-0152 (Nov. 30, 2010) ("the sale of clinical laboratory testing services under capitated contracts to physician groups constitutes a relevant antitrust market"). Alternatively, the complaint permits the product market to be defined as "the sale of clinical laboratory testing services to physician groups." *Id.* at ¶ 12. That market is distinct from a market that includes all clinical laboratory testing services provided under fee-service contracts to physician groups, as opposed to just those services *paid for* by those physician groups.

[2] Complaint ¶ 8, *In re Quest Diagnostics Inc./Unilab Corp.*, FTC Docket No. C-4074 (Feb. 21, 2003), *available at* http://www.ftc.gov/os/2003/02/questcmp.htm.

[3] Footnote 4 states in its entirety:

> If the pricing incentives of the firms supplying the products in the candidate market differ substantially from those of the hypothetical monopolist, for reasons other than the latter's control over a larger group of substitutes, the Agencies may instead employ the concept of a hypothetical profit-maximizing cartel comprised of the firms (with all their products) that sell the products in the candidate market. This approach is most likely to be appropriate if the merging firms sell products outside the candidate market that significantly affect their pricing incentives for products in the candidate market. This could occur, for example, if the candidate market is one for durable equipment and the firms selling that equipment derive substantial net revenues from selling spare parts and service for that equipment.

U.S. Dep't of Justice & Fed. Trade Comm'n, Horizontal Merger Guidelines § 4.1.1 n.4 (2010), *available at* http://www.ftc.gov/os/2010/08/100819hmg.pdf.

1

LX-0208-0001

and (2) the ability to steer lucrative pull-through fee-for-service business to the labs that purchase a physician group's capitated business. The sale of these two products (regardless of whether the IPA or a fee-for-service insurer pays for the product) is inextricably linked: without the promise of the pull-through fee-for-service business, it would be against the labs' economic self-interest to enter into the capitated contracts.

The complaint's central premise – that a capitated-only market follows the Merger Guidelines' approach to market definition – is misleading. The hypothetical monopolist test in the Guidelines operates under the assumption that price effects across multiple products sold by the merging firms are de minimis. We have reason to believe that this is not the case here. Application of the standard hypothetical monopolist test to a subsidized product (like capitated labs) will result in a candidate market that is misleadingly narrow. Footnote 4 provides a partial explanation of how to apply the hypothetical market case under these circumstances.

*Third*, any doubt about the proper application of Footnote 4 of the Merger Guidelines to this case is dispelled by the case law. Under the Sherman Act, several courts have held that when a company sells a product at a deflated price (as in the case of a capitated contract) with the expectation of subsequent high-margin sales of related products (FFS contracts), the products should be treated as being in the same market. *See, e.g., Kentmaster Mfg. Co. v. Jarvis Prods. Corp.*, 146 F.3d 691 (9th Cir. 1998) ("[O]nly an idiot would think of the cost of A without taking into account the cost of B. . . . There is a single product, sold over time; the rationally-calculated price is the price of [the two products] together."); *NewCal Indus. v. IKON Office Solution*, 513 F.3d 1038 (9th Cir. 2007); *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430 (3d Cir. 1997).[4] Although these are not Section 7 cases, their logic is fully applicable.

Assuming the past is prologue, if the complaint permits the Staff to litigate this case as though the relevant product market consists of laboratory testing services performed under capitated contracts alone, that is how the Staff will proceed, regardless of what the Commission prefers. That is wrong too. As I have previously explained,[5] the Commission, not the Staff, is ultimately responsible for case selection and enforcement strategy. Although I think that there is reason to believe that this transaction will have anticompetitive effects, I cannot support a complaint that alleges an erroneous definition of the relevant product market. I do not fault my colleagues for voting out the product market alleged in the complaint where, as here, they have been put in an untenable position: either they accept the complaint's improper definition of the relevant product market, or, alternatively, they must conclude that they currently lack reason to believe that the merger violates the antitrust laws. I cannot and will not allow the Staff to dictate, in this or any other case, determinations that the Commission should make.

---

[4] The exception to this rule, which does not apply here, is when market imperfections prevent consumers from discovering the price of the follow-on products when they make the initial purchase.

[5] *See* Statement of Commissioner J. Thomas Rosch on the Abandonment of the Endocare, Inc./Galil Medical, Ltd. Merger, *available at* http://www.ftc.gov/speeches/rosch/090609endocarestatement.pdf.