J. Thomas Greene (Cal. Bar No. 57159)
tgreene2@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, DC 20580
Tel: (202) 326-2531
Fax: (202) 326-2624

Stephen A. Mohr (Cal. Bar No. 246340)
smohr@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, DC 20580
Tel: (202) 326-2850
Fax: (202) 326-2624

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> LABORATORY CORPORATION OF AMERICA, et al., <br><br> Defendants. | No. SACV-10-1873-AG (MLGx) <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR AN INJUNCTION PENDING APPEAL** <br><br> Hon. Andrew J. Guilford |

Plaintiff Federal Trade Commission respectfully moves this Court, pursuant to Fed. R. Civ. P. 62(c), to grant an injunction pending appeal preventing Defendants Laboratory Corporation of America and Laboratory Corporation of America Holdings ("LabCorp") from taking any further steps to integrate the acquired assets and business of Westcliff Medical Laboratories ("Westcliff") and reinstating the Court's pre-existing temporary restraining order ("TRO")

preserving the hold separate agreement in order to maintain the pre-decision status quo pending appeal of this Court's denial of the FTC's motion for preliminary injunction. Alternatively, Plaintiff respectfully moves this Court for an injunction pending appeal for the limited period of time needed for the FTC to file, and for the Court of Appeals to rule on, an emergency application in that court for an injunction pending appeal. The Commission is filing its Notice of Appeal concurrently with these papers, and has conferred with counsel for the Defendants, pursuant to Local Rule 7(m), and was informed that Defendants oppose this motion. Unless the Court issues an injunction pending appeal (or pending a decision by the Court of Appeals on such an injunction), *LabCorp will immediately begin integrating Westcliff into its own operations.*

LabCorp intends to commence disassembling and effectively obliterating the former Westcliff business immediately by "consolidating redundant facilities and employees" – i.e., closing or "repurposing" the Westcliff main laboratory in Santa Ana, California and other testing facilities, Order Denying Prelim. Inj. ("Order") 87; "eliminating duplicative operations" such as patient service centers, Order 100; firing not only couriers, but also salespeople and other key employees who had been the linchpin of Westcliff's ability to attract and maintain good relationships with customers and to provide high-quality service; converting Westcliff's IT system and client billing system to LabCorp's systems; terminating vendor contracts under which Westcliff had obtained the equipment and supplies needed for it to operate independently; and migrating customers from Westcliff contracts over to LabCorp's own contracts. *See* PX 1139 at 47-54 (LabCorp CID Response § 14) (describing steps LabCorp intended to take once permitted to integrate the Westcliff business into LabCorp's own operations); LX 0406 at 9 (¶ 15), 10-11 (¶¶ 22-24) (Aicher Decl.). These actions would substantially impede any subsequent effort to re-create Westcliff as a viable competitor if the FTC ultimately

were to conclude that divestiture was necessary to restore competition, since the entity would never be able to regain the "sufficient economies of scale and [] extensive network of PSCs providing convenient access" necessary "[t]o offer capitated contracts to physician groups on competitive terms." Order 79. Nor would a future divested, but decimated, Westcliff be able to surmount the "[r]eputational barriers [that] can make it difficult for a new laboratory to break into the market . . . ." Order 82. For the purposes of this motion, Plaintiff notes that any costs associated with extending the hold separate agreement that has been in place for almost eight months, by a few days, is minimal, and that the requested relief pending the Court of Appeals' ruling on its application to that court will not meaningfully interfere with this already-consummated transaction.

## ARGUMENT

Federal Rule of Civil Procedure 62(c) authorizes a court to issue an injunction pending appeal of an order or final judgment "that grants, dissolves, or denies an injunction." Fed. R. Civ. P. 62(c). "A party seeking a stay must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, and that a stay is in the public interest." *Humane Society of the U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009) (citing *Winter v. Natural Resources Defense Council, Inc.*, --- U.S. ---, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)).

If injunctive relief pending appeal is denied, LabCorp will be free to dismantle Westcliff. LabCorp intends to irrevocably alter the ongoing operations of an independent Westcliff by closing overlapping PSCs, firing hundreds of Westcliff employees, moving Westcliff's laboratory testing operations to LabCorp's testing facility in San Diego, repurposing Westcliff's testing facility in Santa Ana, and integrating Westcliff's sales force into that of LabCorp. Following such integration, it will be extraordinarily difficult for the Court of Appeals

subsequently to provide relief if the Commission prevails on appeal.  Without such an injunction, the destruction of a still-ongoing, independent Westcliff will occur and the Commission would also be severely impaired in obtaining effective relief "if the Commission ultimately prevails and divestiture is ordered" in the administrative proceedings in FTC Docket No. 9345, *see FTC v. Warner Communications Inc.*, 742 F.2d 1156, 1165 (9th Cir. 1984), and the public interest will be permanently, and irreparably, injured, *id.* at 1165;[1] *see also FTC v. H.J. Heinz Co.*, No. 00-5362, 2000 U.S. App. LEXIS 34474 (D.C. Cir. Nov. 8, 2000) (order granting emergency motion for injunction pending appeal and expedited appeal).  In *Heinz*, the trial court had denied both the FTC's motion for a preliminary injunction against the proposed merger and the FTC's motion for an injunction pending appeal.  The Court of Appeals, however, granted an injunction pending appeal in order to allow for full appellate review and meaningful relief in the event the FTC ultimately prevailed.  *Id.* at *10 (injunction pending appeal necessary to "protect the public interest" from "irreversible" injury).  Similarly, in *Warner*, the Court of Appeals for the Ninth Circuit granted the FTC's emergency motion for an injunction pending appeal before ultimately reversing the district court's denial of the FTC's motion for a preliminary injunction.  742 F.2d at 1159.

    Most critically, the public interest will be immediately and irreparably harmed by LabCorp's elimination of the competitive pressure represented by an independent Westcliff if it is able to incorporate Westcliff's physician group

---

[1] Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), reflects Congressional recognition that post-merger divestiture is an inadequate and unsatisfactory remedy in a merger case, 119 Cong. Rec. 36,612 (1973), a point that also has been the subject of judicial notice by the United States Supreme Court.  *See, e.g.*, *FTC v. Dean Foods*, 384 U.S. 597, 607, 86 S. Ct. 1738, 16 L. Ed. 2d 802 (1966) ("Administrative experience shows that the Commission's inability to unscramble merged assets frequently prevents entry of an effective order of divestiture.")

contracts into its portfolio. Once LabCorp has taken over Westcliff's physician group contracts, nothing would constrain LabCorp from raising prices and further reducing service levels, and neither the Commission nor the courts would be as able to afford fully effective relief if there is a final determination that the merger violates Section 7 of the Clayton Act.

The FTC also respectfully submits that the Court's finding that the FTC failed to show a likelihood of success on the merits of its claim that the merger violated Section 7 of the Clayton Act, 15 U.S.C.§ 18 (2006), or Section 5 of the FTC Act, 15 U.S.C. § 45 (2006), raises important antitrust and public interest issues that warrant careful review by the Court of Appeals. The Court of Appeals should be able to resolve these issues before the structure of the market is irrevocably altered by the integration of Westcliff, the third largest clinical laboratory in Southern California. In particular, this case, and the Court's disposition of it, present substantial issues of law that the Court of Appeals should have an opportunity to address, including:

(a) Whether the Court properly applied the facts of this case to the correct legal standard in this section 13(b) action;

(b) Whether the Court applied the correct legal standards for determining relevant product and geographic markets;

(c) Whether it is error to consider firms that have acquired incumbent suppliers to be "new entrants";

(d) Whether the Court abused its discretion by improperly weighing evidence contained in contemporaneous business documents and post-litigation party official declarations;

(e) Whether the Court applied the incorrect legal standard regarding presumptions of anticompetitive effects;

(f) Whether the Court properly considered the public interest in balancing

5

the equities, and whether the Court imposed an improper burden on the Commission to demonstrate that effective relief would not be obtainable via divestiture; and

(g) Whether it was legal error to accord significant weight to private equities when the law of this Circuit is that although private equities may be considered, public equities receive far greater weight.

The FTC satisfied its burden of raising serious and substantial questions to be resolved at trial, justifying a statutory preliminary injunction. *Warner*, 742 F.2d at 1162. The Court's opinion does not mention the Commission's key evidence on the anticompetitive effects of the acquisition, including, most significantly, LabCorp's own due diligence documents cataloging the disruptive effect Westcliff has had on the relevant market and LabCorp's plan to raise prices to physician groups, *see*, *e.g.,* PX 1030, or business documents further describing LabCorp's post-acquisition plans to increase prices when it would "leave us and Quest as the only viable options." PX 1040 at 1. The Court's opinion includes findings supporting the conclusion that the relevant market is the provision of clinical laboratory testing services to physician groups on a capitated basis; that the relevant geographic market is Southern California; and that pre- and post-merger market concentration levels are sufficiently high to establish a prima facie violation of the Clayton Act. The Court's opinion includes additional findings that the anticompetitive implications of the high market shares are butressed by barriers to entry and expansion. These findings are sufficient to raise "serious, substantial, difficult" questions regarding the anticompetitive effects of the acquisition – and therefore the likelihood of success – even where there are conflicts in the evidence. *Warner*, 742 F.2d at 1164.

Under the law of this Circuit, if the Commission "demonstrate[s] a likelihood of success and the public equities do not support the denial of injunctive

relief, a preliminary injunction is warranted." *Warner*, 742 F.2d at 1165. The principal public equity to be considered is effective enforcement of the antitrust laws. *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 726 (D.C. Cir. 2001); *FTC v. Univ. Health, Inc.*, 938 F.2d 1206 (11th Cir. 1991). Effective enforcement of the antitrust laws means preserving the benefits of competition during the pendency of the determination of the legality of the acquisition by the Commission, *see Heinz*, 2000 U.S. App. LEXIS 34474 at *10; *Warner*, 742 F.2d at 1159, and ensuring that effective relief will remain available if the Commission prevails and divestiture is ordered, *Warner*, 742 F.2d at 1165. Other public equities include an acquisition's potential beneficial economic effects and pro-competitive advantages for consumers, but where the record contains conflicting evidence on the anticompetitive effects of the merger, it is unclear whether such equities support the grant or denial of injunctive relief. *Id.*

Finally, LabCorp will not be irreparably harmed by the grant of injunctive relief in the form of a brief reimposition of the temporary restraining order pending the Commission's appeal of this Court's denial of the requested preliminary injunction. The Commission expects to seek an expedited appeal from the Court of Appeals; accordingly, little, if any, harm to LabCorp will be caused by the requested grant of injunctive relief. The small impact of this brief delay in LabCorp's plans to integrate Westcliff's operations into its own is far outweighed by the substantial public interest in maintaining free, open and competitive markets.

## CONCLUSION

In view of the serious legal questions raised by the Court's decision to allow Defendants to complete its planned integration of Westcliff, and in view of the grave potential for irreparable harm to the public before there can be full appellate consideration of the preliminary injunction, the Court should reinstate the TRO

7

until these important questions are resolved. *See Heinz*, 2000 U.S. App. LEXIS 34474 at *10 ("The public interest in enforcement of the antitrust laws is strong; any injury to competition from going forward with the merger would plainly be irreversible, while the same cannot be said for any loss to competition from its delay."). In any event, this Court should grant an injunction pending a decision by the Court of Appeals on the emergency application by the Commission to that court for an injunction pending appeal. As the D.C. Circuit stated in *FTC v. Weyerhaeuser*, 665 F.2d 1072, 1076 (D.C. Cir. 1981), it is "not consistent with the fair, effective administration of justice for the district judge to deny to a party, situated as was the FTC in this case, even a brief holding order affording time to apply to this court for provisional relief." Only a grant of interim relief will afford the Court of Appeals the opportunity to determine whether the Court's denial of a preliminary injunction is correct and protect the public interest in the event that it is not. *See Heinz*, 2000 U.S. App. LEXIS 34474 at *10 ("The [merging parties'] defense may yet carry the day, but only the grant of interim relief will both afford this court an opportunity to determine whether that should be the case and protect the public interest in the event that it is not."). Therefore, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for an Injunction Pending Appeal.

Dated: February 23, 2011                    Respectfully submitted,


By:   _/s/J. Thomas Greene_____

J. Thomas Greene (Cal. Bar No. 57159)
Bureau of Competition
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, DC 20580
Telephone: (202) 326-2531
Facsimile: (202) 326-2624
tgreene2@ftc.gov

**DECLARATION OF SERVICE BY EMAIL**

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a citizen of the United States, over the age of 18 years, and not a party to or interested in the within action; that declarant's business address is 600 Pennsylvania Avenue N.W. Washington, DC 20580.

2. That on February 23, 2011, declarant served the PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS  MOTION FOR AN INJUNCTION PENDING APPEAL by emailing a true and correct .pdf to J. Robert Robertson at robby.robertson@hoganlovells.com and Corey W. Roush at corey.roush@hoganlovells.com.

__/s/J. Thomas Greene___
J. Thomas Greene
Counsel for Plaintiff
Federal Trade Commission